UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RICARDO DE LEON TREJO, | ) |
| *Petitioner*, | ) Case No. 3:26-cv-47 |
| v. | ) Judge Atchley |
| CHRISTOPHER S. BULLOCK[1] and TOM SPANGLER, | ) Magistrate Judge Poplin |
| *Respondents*. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Ricardo De Leon Trejo's "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241[,]" [Doc. 1] in which he asks the Court to order his immediate release or, alternatively, order that he receive a bond hearing. For the reasons set forth below, Petitioner is entitled to a bond hearing, and therefore, the Court grants the petition in part.

### I. BACKGROUND

Petitioner Ricardo De Leon Trejo, a Mexican national, unlawfully entered the Country at an unknown place and time. [Doc. 1 at ¶ 13; Doc. 25 at 2]. He has resided in the United States "for several years[,]" and his partner and three children are United States citizens. [Doc. 1 at ¶ 13]. Petitioner "has a pending application [f]or lawful permanent residence and an approved work permit" [*Id.*]. In fact, on November 18, 2025, the United States Citizenship and Immigration Services ("USCIS") issued a Notice of Prima Facie Case Determination regarding Petitioner's I-360 Violence Against Women Act self-petition. [Doc. 28-1].

---

[1] Because Christopher S. Bullock was recently named as Field Office Director of the New Orleans Field Office for United States Immigration and Customs Enforcement, he is automatically substituted for named Respondent Scott Ladwig. *See* Fed. R. Civ. P. 25(d).

On January 27, 2026, Immigration and Customs Enforcement ("ICE") took Petitioner into custody in Knoxville, Tennessee, as he was leaving a Home Depot. [Doc. 1 at ¶¶ 6, 13]. He was initially detained in the Knox County Detention Facility on an immigration detainer [*See* Doc. 16-1]. Petitioner was served with a Notice to Appear, which was issued on the basis that he was present in the United States without having been deemed admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i), and that he was present without being in possession of valid entry or travel documents in violation of 8 U.S.C. § 1182(a)(7)(A)(9)(I). [Doc. 25-1]. Petitioner was scheduled for a hearing before an immigration judge in the Lasalle Detention Facility in Jena, Louisiana. [*Id*. at 1].

On February 2, 2026, while Petitioner was still detained in Knox County, he filed the instant petition [Doc. 1], naming Scott Ladwig, then Acting Director of ICE's New Orleans Field Office, and Knox County Sheriff Tom Spangler as Respondents and maintaining that he is being unlawfully held without a bond determination as a person "seeking admission" to the border under the mandatory detention provisions of the Immigration and Nationality Act ("INA") § 235(b), codified at 8 U.S.C. § 1225(b). [Doc. 1 at ¶ 13].[2] In support of his petition, Petitioner argues that his classification as an individual subject to mandatory detention is incorrect as a matter of law; that he is a member of the bond-eligible class certified by the Central District of California in *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025); and that his continued mandatory detention violates due process and the Administrative Procedures Act ("APA"). [*Id.* ¶ 13].

---

[2] Petitioner also filed an emergency motion for a Temporary Restraining Order ("TRO") and preliminary injunction requesting the relief sought in his habeas petition. [Doc. 2]. The Court's Order partially granting the TRO [Doc. 4] spawned multiple motions [Docs. 7, 18, 26], responses [Docs. 9, 19, 20, 28], notices [Docs. 5, 15, 17, 22–24, 27], Orders [Docs. 12, 21, 29], and an objection [Doc. 14], the history and substance of which the Court declines to restate here.

On February 6, 2026, Respondent Spangler responded to the petition, asserting that Petitioner had been returned to ICE's custody on February 4, 2026; that he "takes no position on whether the petition" should be granted; and that because Petitioner is no longer in his custody, he cannot provide Petitioner with the sought relief. [*See generally* Doc. 16]. The Government responded to the petition on February 9, 2026, arguing that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2); the *Bautista* judgment in not binding in this Court and conflicts with the INA; Petitioner has been provided with all process due; any APA claim is "unavailing"; and this Court cannot release Petitioner, even under the detention statute he claims is applicable, i.e., 8 U.S.C. § 1226(a). [*See generally* Doc. 25]. Petitioner replied to these arguments, incorporating into his reply a response to a prior motion and a "Renewed Emergency Motion for Contempt and Immediate Release." [Doc. 28].

The Court, having reviewed the Parties' filings and the applicable law, finds that the issues have been adequately briefed and that a hearing is unnecessary. For the reasons articulated below, the Court grants the petition in part and orders the Government to provide Petitioner with a bond hearing.

## II.   ANALYSIS

A court may grant a writ of habeas corpus only if the petitioner shows he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 confers jurisdiction on district courts to hear habeas corpus challenges to the lawfulness of noncitizen's detention. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (providing that habeas corpus is the appropriate remedy to determine the legality of a person's custody).

The interplay of two detention provisions of the INA, 8 U.S.C. §§ 1225(b)(2) ("Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and 1226(a) ("Apprehension and detention of aliens[3]"), are central to Petitioner's claims. These provisions were enacted as part of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") of 1996, and both provide for the detention of noncitizens pending resolution of removal proceedings.

Section 1225 provides for the mandatory detention of "applicants for admission" who are apprehended upon arrival lacking any valid entry document, or who are apprehended at any location and unable to show that they have been physically present in the United States for more than two years. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A).

By contrast, individuals in detention under § 1226(a)—standard removal proceedings—are generally entitled to a bond hearing at the outset of their detention. 8 U.S.C. § 1226(a)(2). An exception to this discretionary detention exists for those arrested, charged with, or convicted of certain crimes, in which case detention is mandatory. 8 U.S.C. § 1226(c).

For years, the IIRIRA was interpreted with § 1225(b) providing rules for noncitizens attempting to enter the United States, while § 1226(a) provided the "default rule" for the detention of immigrants "already in the country[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018); *see also Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct*

---

[3] An "alien" is any person who is "not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

*and Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). And because noncitizens already living in the country upon apprehension were considered subject to § 1226(a), they were entitled to a bond hearing before an Immigration Judge. *See* § 1226(a)(2); *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) ("An alien detained pursuant to § 1226(a) is entitled to an individualized hearing before an IJ to determine whether detention is necessary during the course of his immigration proceedings." (citing 8 C.F.R. § 236.1(d)(1))); *see also Lopez-Campos v. Raycraft,* No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) ("[N]oncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge.").

But in July 2025, the Department of Homeland Security ("DHS"), in coordination with the Department of Justice ("DOJ"), issued a new interpretation of this statutory framework that reclassified all persons detained in the United States without inspection (i.e. "inadmissible" noncitizens), even those who have lived in the United States for years, as "applicants for admission" under § 1225(a)(1), and thus, subject to the mandatory detention provision under § 1225(b)(2)(A). See AILA, *Ice Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, available at https:// www.aila.org/library/ice-memo-interim-guideance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 11, 2026). The Board of Immigration Appeals ("BIA") subsequently agreed with this interpretation in a published decision, holding that § 1225(b)(2)(A) requires the detention of noncitizens without admission during their removal proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025).

The Government urges the Court to adopt this recent, less lenient interpretation of the INA, arguing that it is consistent with the statutory text and the goal of the IIRIRA. [*See, e.g.*, Doc. 25

5

at 4–5]. The Government notes that the BIA has explained that "an 'applicant for admission' under 8 U.S.C. § 1225(a)(1), by virtue of his entry without inspection, must necessarily be 'seeking admission,' as the term is used in § 1225(b)(2)(A)." [*Id.* at 6 (citing *Hurtado*, 29 I. & N. Dec. at 220)]. The Government argues that Petitioner is "an applicant for admission" subject to § 1225(b)(2)(A) because he is both "literally applying for admission" and "is present in the United States without having received permission to be here." [Doc. 25 at 7 (citing *Singh v. Noem*, No. 2:25-cv-00157-SCM, 2026 WL 74558, at *3 (E.D. Ky. Jan. 9, 2026))].

Petitioner, however, notes that "'seeking admission' is an affirmative, present-tense action," while "applicant for admission" is a statutory status "defined by physical presence." [Doc. 28 at 6, 8]. Thus, Petitioner argues, "[a]n interior resident who was apprehended miles from the border and years after entry is an 'applicant for admission' by status" but is "not currently 'seeking it.'" [*Id.* at 8]. And because "you can't go into a place where you already are[4][,]" Petitioner maintains that he is not "seeking" admission, and his detention is governed by § 1226(a). [Doc. 28 at 6].

The Government recognizes that this debate—whether a noncitizen without lawful admission who has resided in the United States for an appreciable period is subject to mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a)—has led to a divergence of opinion among the courts. [*See generally* Doc. 25]. It also acknowledges that this Court has previously interpreted §§ 1225 and 1226 in the manner Petitioner proposes, *see Patino v. Ladwig*, No. 3:25-cv-00569, 2025 WL 3628450 (E.D. Tenn. Dec. 15, 2025), and that that this question of statutory interpretation is not resolved in this Circuit, as it is currently on appeal, *see Reyes v. Raycraft*, No. 25-1982 (6th Cir.). [Doc. 25 at 6, 8]. But the Government maintains that

---

[4] *J.G.O. v. Francis*, No. 25-cv-7233(AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025).

even though most courts have agreed with the position held by Petitioner, "the few" holding to the contrary "have it right." [*Id.* at 8 (quoting *Singh*, 2026 WL 74558, at *1)].

Petitioner, meanwhile, points the Court to the decision of another district court that recently noted:

> By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (footnotes omitted) (collecting cases).

Given the absence of a decision by the Sixth Circuit on this issue, the Court must make its own assessment of which statutory interpretation is best.[5] And the Court begins by noting that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)); *see also Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (holding that it is "particularly doubtful that Congress intended section 1225(b)(2)(A) to apply to non-citizens, like Petitioner, detained while present in the United States"

---

[5] The Government notes that the Fifth Circuit recently held that § 1225(b)(2)(A) applies to the detention of noncitizens who entered the country unlawfully and were arrested while living in the United States [Doc. 25 at 6 (citing *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026))].

because the "idea that a different detention scheme would apply to non-citizens 'already in the country,'" as compared to noncitizens "'seeking admission into the country,'" is "consonant with the core logic of our immigration system." (quoting *Jennings*, 583 U.S. at 289)).

In considering the statutory text, "the Court must assign each word of the statute its ordinary, contemporary, common meaning . . . , while keeping in mind that statutory language has meaning only in context." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation, quotation marks, and alterations omitted). The title of § 1225 is "Inspection by Immigration Officers; Expedited Removal of Inadmissible Arriving Aliens; Referral for Hearing." 8 U.S.C. § 1225. This title refers to "arriving" noncitizens, which is the people to whom § 1225(a)(1)'s definition of "applicant for admission" and § 1225(b)(2)(A)'s mandatory detention provisions apply. The Supreme Court has held that "the title of a statute in the heading of a section are tools available for the resolution of a doubt" of the statute's meaning. *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (internal quotation marks and citation omitted). And here, Petitioner was not "arriving" or "seeking admission" when he was detained. *See Lopez-Campos*, 2025 WL 2496379, at *6 (finding "seeking admission" means "action–something that is currently occurring, and in this instance, would most logically occur at the border upon inspection").

Further, "[i]t is a cardinal principal of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation and internal quotation marks omitted). And in January 2025, Congress amended § 1226 via the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025). The LRA added § 1226(c)(1)(E), which requires mandatory detention for noncitizens who are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled), § 1182(a)(6)(C)

(misrepresentation), or § 1182(a)(7) (noncitizens lacking valid documentation) **and** have been arrested for, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E)(i)–(ii) (emphasis added). But if the Government's interpretation was correct, § 1225(b)(2)(A) would govern all cases where someone was alleged to have entered without inspection, rendering the addition of the LRA's subsections immaterial. That is, the LRA's "recently created statutory exception" to § 1226 mandating detention for noncitizens present in the United States without being admitted and who have been arrested for, charge with, or convicted of certain crimes "would be largely redundant if § 1225(b)(2) authorized his detention as well." *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *5 (E.D. Mich. Nov. 7, 2025) (citing *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)).

Therefore, the Court finds the text and structure of § 1225(b)(2)(A) are inconsistent with the Government's interpretation, and that § 1226(a) is the appropriate statutory provision for considering Petitioner's detention. However, the Court agrees with the Government that § 1226 does not provide Petitioner with a right to release on bond; it permits Petitioner an opportunity to seek bond from the Immigration Court. *See Patino v. Ladwig*, No. 3:25-cv-00569-KAC, DCP, 2025 WL 3628450, at *3 (E.D. Tenn. Dec. 15, 2025) ("Under Section 1226(a) and the relevant regulations, Petitioner may be detained pending a hearing on her release. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1, 1236.1, 1003.19(a). She is entitled to a hearing on her release, but the law does not require her immediate release. *See id*."). Accordingly, the Court will order the Government to provide Petitioner with a bond hearing but declines to order his release.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's federal habeas petition **in part** and **ORDERS** the Government to provide Petitioner with a bond hearing consistent with

9

§ 1226(a) within **ten (10) days** of entry of this Memorandum Opinion and Order. All other relief requested in the petition is **DENIED**, as is all other relief sought in Petitioner's reply. An appropriate judgment order will enter.

    **SO ORDERED.**

                                        */s/ Charles E. Atchley, Jr.*
                                        **CHARLES E. ATCHLEY, JR.**
                                        **UNITED STATES DISTRICT JUDGE**